Case No. 21-5081, Campaign Legal Center and Katherine Hinckley-Kelley Appellants v. Federal Election Commission, et al. Ms. Malloy for the appellants, Ms. Branch for the appellees. Good morning, counsel. Counsel for appellant, you may proceed. Thank you. Good morning, your honors, and may it please the court. My name is Tara Malloy for Plaintiff's Appellants, Campaign Legal Center, or CLC, and Ms. Hinckley-Kelley. Thank you. The key issue on appeal is whether plaintiffs have been deprived of statutorily required information about potentially millions of dollars of contributions made by the SuperPAC Correct the Record to the 2016 presidential campaign of Hillary Clinton, such that plaintiffs have suffered informational injury. The answer is yes. Neither Correct the Record nor the from this alleged coordinated spending, even though the Federal Election Campaign Act, or FECA, clearly requires this disclosure. Without this information, plaintiffs are in the dark about even how much money the Clinton campaign received and spent in the election. Counsel, let me ask you a question, which will help me to understand how you're focusing your argument. You have Wertheimer on the books, and my understanding of your argument is that in Wertheimer, the coordinated in-kind expenses were disaggregated, and the only question there was whether those expenses, which were disaggregated and shown, had to be shown by another group. I don't remember which, but in any event, they were already disclosed, and the court simply said they don't have to be disclosed again. Is that your argument? There was disaggregation already? That's correct. This court in Wertheimer found that the political parties at issue already were required to report their coordinated expenditures as so-called Section 441A-D coordinated expenditures. So as a matter of law, these coordinated expenditures were disclosed, and at this point, the only- So you had a disaggregation between exempt and non-exempt expenditures. Right, between coordinated and non-coordinated expenditures. Exactly. This was already required by law from the parties at issue, and what the plaintiffs, the Wertheimer plaintiffs, were looking for was a reciprocal complementary report from the candidate that benefited from those coordinated expenditures. This was a duplication that- I understand. I just want to make sure what your premise was, how you're reading Wertheimer, and that's what I thought you were saying. You were saying you can't possibly see that it's relevant here because there isn't any disaggregation here, and so it's not a matter of duplicate exposure here. There's no exposure is what your argument is. Is that right? Absolutely, and Wertheimer would only be on all fours with this case, but in fact, correct the record, had reported all the in-kind contributions we allege occurred, and then we asked, well, we want the Clinton campaign- Right, exactly. To report the same expenditures in their own reports. All right. I understand your argument. Correct, and to your questions about what was or was not in correct the records reports, these are the reports that actually did file the 2016 election cycle. These are the reports that purported only to disclose the entirely independent spending by a hybrid super PAC. These don't really supply any of the information that plaintiffs are seeking. In fact, correct the record contends throughout this litigation that it made no coordinated expenditures within the meaning of FICA, that any disbursement it made in concert, let's say, with the campaign qualified for the internet exemption, and this was the carve out the FEC created from its coordination rules for certain types of unpaid internet communications. But the plaintiffs contend, and the FEC's own general counsel agreed that there was reason to believe that correct the record, in fact, made millions of dollars of coordinated expenditures that were not for exempt internet communications at all. That's the fight. That's one of the fights. Yes. That's one of the fights. I mean, and the fact that there is a legal query here, it seems to me of no moment, because as in Aikens and as in Shays, the court, obviously there's a legal question that's going to be answered. But I want to make sure I'm understanding you're saying that in your view, they are listing things as exempt that are not really exempt. Correct. And and there are consequences for doing it that way because there are penalties that might flow if you put things in the right category. So it's not you're saying their argument that all you do is shift the columns is wrong because there's a consequence as to whether or not you're in the exempt or non-exempt category and whether you've done it correctly. Absolutely. You can't just shift information from one column to another because the information as it stands right now is incorrect. It is not an accurate portrayal of what plaintiffs believe under our reading. The law occurred in terms of correct record spending. There was correct the record as the general counsel found tended to report all of its expenditures as undifferentiated disbursements for general overhead, things like salary, rent, travel. It made no distinction between those disbursements that supported exempt Internet communications and those disbursements that supported non-exempt, non-Internet purposes. And in fact, some of these disbursements were probably needed to be allocated between exempt and non-exempt purposes. Then there's a whole other category of spending, spending that even interveners don't contend were connected to the Internet. This is things like campaign surrogate training or outreach to the conventional offline press. Here, as talked about the second fight, there is some question about which of these specific expenditures were coordinated within the mean of FICA with the campaign. That means it has to be in consultation concert for at the request of suggestion of the campaign. There, there is a fight about which of these offline expenditures were indeed coordinated with the campaign. So we don't have information from correct records current reports, but either of these possible sources of in-kind contributions from correct the record to the Clinton campaign, we just have reason to believe and FTC as general counsel agreed that there are possibly millions of dollars of contributions that went unaccounted for. Ms. Malloy, assume for the sake of argument that I take your factual premise to be correct, that correct the record and the Hillary for America campaign violated any number of campaign finance laws. How does that hurt your client in a way that distinguishes your client from every other voter? Correct. If I understand you correctly, you're asking whether the injury here was officially individualized to correct. Yes. Right. And this particular specific issue was taken up by the Supreme Court in FECB Aikens. There, the plaintiffs again said we don't have disclosure about APAC's spending. They didn't register as a political committee. One of the arguments made by the FEC said that, look, as a complainant here, you are on the same level with all the other public voters. What makes it individualized? And there, the court found that the injury was still sufficiently concrete and particularized because there was information lacking. It wasn't an abstract concern about well-being. Instead, the complainants there had suffered information because they didn't have the required information. So that was sort of asked and answered in Aikens that here, the lack of information is sufficiently concrete that they complained. And each member of the public really has that injury. I'll ask. Go ahead. No, no, go ahead. I'll ask Ms. Branch if she has a way to distinguish this case from Aikens. Imagine that she has a way to distinguish it that convinces me that Aikens does not control. How can – give me another way that you can win. Another way we can win, yes. Well, in addition to Aikens, right, that it's sufficiently individualized because the informational deprivation is concrete. The Aikens court also noted – and I think this was actually the D.C. Circuit in the preceding decision – that the actual complainants here were different from the public in that they'd actually already undertaken the entire FEC enforcement process. They were the ones that filed the complaint. They were the ones that alleged a disclosure violation. They were the ones that invoked the judicial review provision under FECA to get a review of the dismissal of the complaint. So they were separate from the rest of the public in the sense that they had undertaken this enforcement proceeding. That's not enough to create your standing. The test applied by this circuit is, one, whether a statute requires information to be publicly disclosed on the plaintiff's review of the statute, and two, whether the information is of use to the plaintiffs. That's what this test – Of use to the plaintiffs has been more than what any voter might be interested in knowing. The cases have been where there's a mission, there's an obligation above and beyond. That's right. And you gather information and share it as you decide. Right. And that was sort of the second half of the informational injury inquiry. It was just less disputed. But CLC submitted an affidavit from one of its federal reform directors articulating and enumerating all the different ways that CLC, as a campaign finance and democracy organization, use, say, a super PAC reporting to inform the public, to inform voters of the spending and the nature of their roles in elections. Further, Cynthia Kelly submitted her own affidavit discussing how she uses the specific information in this case to evaluate candidates and engage in the political process. So absolutely, that was another prong that we showed the affidavit submitted below. I mean, you're relying on Aikens and Shays, and Shays is a very strong follow-up to Aikens, saying essentially, I think, essentially the same thing, that you suffer an injury in fact, if there's an inability to obtain information, and in AIPAC, it was the list of AIPC donors, that's all, and campaign-related contributions and expenditures, that on the plaintiff's view of the law, the statute require it be made public. And the injury in fact, there is an injury in fact, when the plaintiff fails to obtain the information, which must be publicly disclosed pursuant to statute. It's the information injury, it's different. The generalized grievance cases, my colleagues are alluding to, I think, raise different issues than the information injury cases. And there is the additional problem with Wertheimer. Wertheimer is simply not on point, because the information there was the same kind of information that's being fought over here, but it was disaggregated. So the information the plaintiffs wanted there was shown, it's not shown here. Wertheimer is really about, you already have it, we're not going to let you get it again. So that case, to me, seemed irrelevant. And I don't know how you get past, and I'll be interested to hear the other side's arguments, I don't know how you get past Aikens and Shays, they have very strong statements about informational injury supporting standing. We agree. I suspect you did. You had said, I don't agree. If there's nothing further, I can just reserve any time for rebuttal. Sorry. So. Counsel for Appellees. Good afternoon, Your Honors. Aria Branch on behalf of Appellees Correct the Record and Hillary for America. I want to start with where the discussion left off with the discussion of Wertheimer, which I do think is controlling in this case. The difference between this case and the Aikens case that's been referenced is that here, as in Wertheimer, the full facts are known. No, they're not, Counsel. I really want you to understand and respond to my concern. I spent a lot of time trying to sort this out. The information they want, disaggregation, to be interested in, was exposed in Wertheimer. It is not exposed here. It is not merely the same information, a duplicate of the same information. It's a different array of information, and it has consequences, depending what that array shows. There's a big fight going on here, and that was shown in the agency proceedings, over what should and should not be exempt. It's a huge fight, and that's what's motivating this litigation. They want the disaggregation to be able to suggest that when you disaggregate and you see what they're calling stuff that is fit for the internet exemption, it's nonsense. Their view of the law is what we have to accept to determine. You don't dispute that. It's their view of the law. I don't dispute that at all, Your Honor. I don't dispute that at all, and I'd like to focus then on what exactly their view of the internet exemption is here, because I think that's really, really important. Counsel said previously that there are certain expenditures like salary, rent, and other overhead expenses that they want to be allocated between exempt and non-exempt, based on whether they fall within the internet exemption or not. That simply is not consistent with their view of the law on merits. This is a manufactured argument that they've created to create standing. On the merits, their argument is that no overhead expenses, whether it's for salary, rent, et cetera, would fall within the internet exemption. They would always be coordinated. Their argument is that correct? I want to stay with you and raise my concerns. You make that argument in the brief, and I understand the argument you make. Respectfully, I think you're overstating their position, because they have a long argument on mixed expenses, on categories where there may be, and I understood what they were arguing. I certainly never took them to say that everything in the disputed list is in this category that is being fought over, this exempt category or non-exempt category. I don't read them that way. I think they give a couple of examples, that salary, for example, where it might be partially exempt, it might not be. It might be exempt, it might not be exempt. They said they do not mean to say that all of these disputed expenses should be characterized one way. That seems very clear to me in their argument. I'd like to point you, Your Honor, in response to that question to some of the statements they've made in their briefing, which I think directly contradict that position that they take on standing. In their opposition to our motion to dismiss in the district court, they said, disbursements for staff salaries amounted to compensation for personal services rendered to the campaign, and were therefore in-kind contributions, whether or not the ultimate activity qualified as a public communication. The same goes for what campaign legal center. I'm not sure what that is showing. A couple of questions. Coordinated expenses, and that's by definition, and then within that category, there's exempt and non-exempt with reference to the internet. So, a coordinated expense has to be found to be a coordinated expense. And they're saying, yes, they're saying a lot of these things are just coordinated expenses. And then in addition, some are being taken as exempt when they should not have been taken as exempt. So, I don't think their position is inconsistent. Respectfully, I think their argument is that none of the expenses for overhead, for salary, rent, et cetera, fall within the internet exemption. So, they say, correct the record, acted in full coordination with the Hillary Clinton campaign, and that only expenditures related directly and exclusively for internet communications would fall within the exemption. That is certainly their argument with respect to internet exemption. That's right. But I'm not sure how that's damning. The reason that's damning is because all of, correct the records, expenditures that are directly and exclusively related to unpaid internet activity is already apparent on the face of their reports. So, if you go- But you ignored the references that I'm giving you. I didn't give you the page numbers. They can fill in wherever they want. They're saying they're a expenses in the categories that we're talking. They make it very clear that can be mixed expenses. They are not saying this whole list is the same and everything in it should be, they're characterizing as exempt. That is not the way I read their brief. So, I think, respectfully, Your Honor, the mixed-purpose expenses such as for video consulting and travel, communication consulting and travel, those are two examples that they give in their briefing. Those types of expenses are paid overhead expenses that they say would never fall within the internet exemption. So, they would never need to be disaggregated under their view of the law, which, as you said, is what controls under ACOTS. The correct the records expenditures that would fall within the internet exemption, according to their theory, are already apparent on the face of the report. Not if you have mixed, you agree with me, not if they're really, if I'm right in reading their complaint, not if they are saying there are mixed expenses and we do not mean to characterize them all the same way. If that's correct, then my concern about your position is correct, right? Because that information was disaggregated in Wertheim. It's not disaggregated here. I think even if that were the case, as the district court's opinion points out, that ultimately wouldn't matter. I think the classification of a certain portion of an expenditure as an in-kind contribution is still a legal determination. I wanted to get to this. So, what? Aiken starts with saying there's a legal determination we're making. This political committee is or is not a political committee. You got to have a legal determination in there. That doesn't dispose of the case. What's really going on in Wertheimer is the court, there's loose language, but the court is fundamentally saying the materials disaggregated have already been exposed to the plaintiffs. And they just want them exposed by someone else. And we're not going to indulge that. There's no injury. They already have what they want. You don't have disaggregation here. And you can't say merely because this fight involves a legal question, APEC involved, Aiken's involved a legal question, as did Shea's. All of the cases involve a legal question, but the difference between APEC and this case, Your Honor, is that in APEC, there were actually facts that were hidden that weren't disclosed, right? There was an entity that wasn't publicly reporting. Here, correct the record. They came in. You can't characterize this as a nonpolitical committee. And why does that matter? Well, if you view them as a political committee, we get to see who the donors are and how much they donated. Well, that's the information they don't have now, okay? And so in this case, they're saying, if you don't disaggregate, we have no idea what your claims are honestly made with respect to exempt and non-exempt and in-kind reporting requirements. And those were a matter of law. I think that this is a convenient kind of argument that they've manufactured to create standing. I think allowing the appellants to turn one fact, which is not an informational injury, would mean that any plaintiff could prove an informational injury. Any plaintiff could come to court and say, I want to know whether $100 of a particular expense was coordinated. Would that argument have prevailed in Aikens? I think so, Your Honor, because in Aikens- Other people can make the same complaint, and so nobody can? That wouldn't have prevailed in Aikens. Supreme Court wouldn't have bought that in shays. I think in those cases, it's just very different because you had an entity that was not already reporting its expenditures. Here, Campaign Legal Center knows the amount, the date, the recipient, and the purpose of every expenditure made by Correct the Record. The problem is the agency's law and the statutes say that they have to report coordinated in-kind and they have to expose exempt, non-exempt figures. The statute and the law require that. They have to do that. That's right, but those determinations are legal determinations, right? They are not- Legal determination is the same thing in Aikens. It's a legal determination whether you're a political committee. Those political committees are saying, we're not a political committee, so we don't have to submit this information. Supreme Court said that's nonsense. Just their view of the law is what controls, and if they're correct in the view of the law, then you're covered and you have to expose the information. I think the distinction here is that appellant's view of the law is that the internet exemption is extremely narrow and that the expenses that would be exempt under the internet exemption are already clear on the face of Correct the Records reports. If you go on the FEC's website, you can search for web hosting. You can search for graphic design. These are the types of expenditures that Campaign Legal Center says would not be coordinated. Everything else under their theory of this case would be coordinated. They say, and I quote, everything that Correct the Record does by its own admission is in full coordination with the Clinton campaign. Although Correct the Record claims it is relying on commission regulations accepting certain internet activities from the definition of coordinated communications, those rules are simply irrelevant. If you disaggregate, you'd know the amounts of the coordinated contribution. Just like if you make a committee, a political committee, you would know who is contributing. Arguably, there's no need to disaggregate because according to their theory of the law, it's all coordinated. Well, yeah, no, that's where we disagree on what their argument is, but when they come back on rebuttal, I'll listen to what they have to say. Ms. Branch, if I were writing an opinion finding for your side of this, finding that plaintiff lacks standing, I'd go through the analysis under case of controversy, and I'd come to a paragraph where I say, Akins does not control because, and you've given me, I think, the half sentence that would follow, which is Akins does not control because there was no disclosure by an entity of its expenditures, and here there is. The next sentence needs to be, and that matters because, so can you fill in that blank for me? Sure, Your Honor. Thank you for your question. And that matters because the determination of, or I'm sorry, the illegal determination is not sufficient to create an informational injury. And so here, all that would be disclosed if Correct the Record had to go back and amend its reports, as counsel has pointed out, would be a legal determination. You would be moving certain reports to another line that shows or indicates that the expenditures were coordinated. And that type of legal determination under Wertheimer is simply not sufficient to support an informational injury. I understand your argument. The court in response to, and I'm curious as to how you're reading it, because I went back and read that a lot of times. I think all the court in Wertheimer said is the precise information, disaggregated information in Wertheimer, which is what we're fussing over here, has already been exposed. It's already been released. And all they're asking for is that someone else released the same thing. And then the court goes on and states this language about, so all you'd end up with is a legal determination, as if that holding is weighty somehow. That is, if you end up with a legal determination, that can't support informational injury. That really makes no sense whatsoever. Because in Shays and Aikens and all the other informational injury cases, a legal determination always is forthcoming. I think what the court has said is that where there's just a legal determination. Just a legal determination. That there have to be accompanying facts that would result as a result. Disaggregated information is not additional information. So I would point, Your Honor, to the Crew v. FEC case, which we've cited in our briefing, and which Judge Boasberg relied on below. And the site for that is 799 F Sup 2nd. That's a district court case, right? It is a district court case, Your Honor. Respectfully, that's not going to carry weight with me. We're talking about a legal question and we're talking about which precedent applies. And I'm much interested in what, in all due respect, in what a district court judge says about that question. Understood. The only reason I was going to point it out is just because in that case, the court actually looks at the precise issue that I think is present here, which is how much of a particular expenditure should be considered a contribution and how much would not be considered a contribution. And that court did find that that was just a legal determination on a micro level. But if I'm looking at Shays and Akins, that makes no sense to me because there are consequences that flow. And those who are interested in this information, like this group, there's no doubt that they have a very serious interest in this information. You're not contesting that. It's not just someone off the street. This is what they do. They're concerned about this. It matters a whole lot whether and how you disaggregate. Because if the disaggregation shows certain numbers over the limits, then there's a question as to whether there was some illegality. Well, here, I think Correct the Record has come to court to get the law enforced against, I'm sorry, Campaign Legal Center has come to court to get the law enforced against Correct the Record. There is no, I mean, they're a complete argument if you look at the administrative complaint that spurred this case, is that everything Correct the Record did was in coordination with the Hillary for America campaign. They simply want the FEC to apply the coordination rules to Correct the Record to punish it. And this court has said time and time again that that is not sufficient for informational injury, that just trying to get the bad guys is not enough. That's all that was going on in Akins and Shays. The plaintiffs there came in and said, this is information we're entitled to. We're going after these committees. They're political committees. We're going after them because they have information we are entitled to under the law. Same thing in Shays. Exactly the same thing. We're going after them. And we're going to use the information. We're going after them because they're withholding information we're entitled to have. I think the difference in those cases is that there was factual information that would have been revealed from the legal finding of coordination that is just simply not present here. Do you agree with me at all that this aggregated information, if it's disaggregated, do you agree that that is separate information? So, I would not agree with that, but I think the most important piece of this is to really zero in on Campaign Legal Center's view of the law and how it applies to this case. Of course we view it on their view of the law. That's what we have to do in an information standing case. Exactly. And I think that- We have to accept their view of the law. Right. And their view of the internet, of the law here is one that everything Correct the Record did was in coordination with the campaign. And two, that the internet exemption is exceedingly narrow such that it would never exempt any of the expenses that they provide as examples. David Brock's salary, for instance, would never fall within the internet exemption. It would never not be coordinated under their theory of the law. It would simply move from one line as an operating expenditure to another line because it is coordinated. No, actually it would show different information because it would be disaggregated. And I don't- The view of the law thing just makes no sense to me because in Aikens, that's the whole fight. Why I am, as a committee, do I have to expose that? Because the plaintiffs here think the view of the law is you're a political committee. So, the fact that we're going to give them a legal ruling in their favor and accept their view of the law, so what? It's a really unfortunate piece of language in Wertheimer, but it is certainly not the controlling consideration. Wertheimer is about double exposure. Wertheimer is about the court saying they already got the information disaggregated, which is exactly what these folks are looking for, disaggregated information. And Wertheimer- I would argue that this case is on all fours with Wertheimer because they already, under their view of the law, disaggregated information would change absolutely nothing here. Because salary doesn't need to be disaggregated. Expenses made for consulting and various paid activities never need to be disaggregated under their view of the law. It's not like their view of the law is untenable, which we don't have to decide, because the general counsel of the agency was reaching a view that was consistent with their that is the contributions here was subject to a different picture than the one being painted by the group. That's exactly what the general counsel was saying. And then those who dissented in the agency responded by saying no, everything is okay. So, I mean- And I know that's not an issue here. There's a clear fight that is here. I don't have any view one way or the other, but I know they have a tenable view of the law. It's not an inappropriate view of the law. And I'm supposed to accept that to determine whether there's more information that they are entitled to because the law says they are. I totally understand that. And I agree that's not yet an issue in this case. We obviously disagree with their view of the law, but I do think that it's relevant for the standing inquiry. And for the standing inquiry, the types of expenditures that they have identified that would be disaggregated is simply just not the case. They wouldn't be disaggregated if there's a finding of coordination. Under their view of the law, they would simply be deemed coordinated. They would be moved to another line of the FEC report, and there would be law enforcement consequences that would follow. There simply just isn't additional information they would learn because, frankly, of their view of the internet exemption, which is exceedingly narrow and really applies to direct costs, not including overhead for salary, travel, or rent. Those expenditures would never be disaggregated under their view. So I do think this case is on all fours with Wertheimer. And I think- Oh, it's not on all fours with Wertheimer if you had disaggregation. You can't- You're not raising the same issue. You can't say it's on all fours with Wertheimer. You can fight about what Aikens means. It's not on all fours with Wertheimer if you had disaggregation in that case. You can't possibly say that. You had a request for more- a duplicate production of information. That's all. I think here you would have that same request because part of what they want is for the Hillary for America campaign to report the coordinated expenditures that they contend would arise. Gotcha. Thank you. Thank you, Your Honor. Thank you. Anything further, counsel? Counsel for appellees? Oh, yes. I would just like, for the record, to reiterate that it's plaintiff's view of the law that governs the standing inquiry. And surely it's plaintiff's view of its own understanding of the law that should govern our merits inquiry. At no point has a campaign legal center or plaintiffs claim that all of corrector records, internet related spending was somehow not exempt. You cannot read the two opposing district court decisions, all of which focused on how to tease apart overhead expenditures to- I thought counsel was referring to your complaint and filings. Also not that. I would just suggest that if you wish to read a couple pages from our motion to dismiss opposition, we specifically were the ones that raised both David Brock's salary and $589,000 in travel expenditures and argued that they would need to be allocated between the exempt internet and non-exempt, non-internet purposes that they supported. There's no way to read this. We were the ones who raised the salary and travel and other disbursements for overhead as needing to be allocated. And that was the reason that the district court reviewed exactly this question of how to separate what appeared to be a undifferentiated independent disbursement for overhead into its constituent parts, which might be some amount for independent spending and some amount that actually constitutes the in-kind contribution because that was a coordinate expenditure with the campaign. I don't know what we in the district court would have been doing if indeed all of Correct the Record's expenditures were not exempt. This was exactly both standing and the merits inquiry that both took as their starting point the assumption that a sophisticated opposition research group like Correct the Record had a very large online presence and ran a very sophisticated website. And all of the expenses related to that operation, the online portion, were going to be exempt and not considered an in-kind contribution to the campaign. Do you think they did anything that was not in coordination with the campaign? Meaning when we get beyond the legal question of the internet exemption into the area where no party contends that there was a nexus with the internet, this might include the circuit training and the outreach, the rapid response outreach to the press. Well, there it's contested. There was some categories. I'm not asking what they contest. I'm asking what you think. Do you think that, do you think everything they did was in coordination with the campaign? We think there's reason to believe that some amount of their non-internet spending was coordinated with the campaign. As we've said, we're relying upon reputable news articles and the statements or general statements by their leadership and representative that they coordinated the campaign. When you say some amount, do you mean all of it or not all of it? Well, without a FEC investigation, we don't know. That is information that we don't know. And in fact, the general counsel found the same principle. They said, it's clear that there's been some coordination between Correct the Record, systemic coordination between Correct the Record and the Clinton campaign. However, even the general counsel in making its recommendations said we do not know the extent to which the non-exempt non-internet spending was coordinated within the meaning of FECA. And we submitted that the general counsel doesn't know that we cannot be expected to know simply from the public news reporting, which was reputable, but hardly specific or complete. In addition to news reporting, what else did you say you had? We had the news reporting. And then in addition, the leadership of Correct the Record, for instance, David Brock, made multiple statements to the press that they were under the thumb of the campaign, that they were allowed to coordinate because they engaged in exempt spending, and so on, so forth. So we relied upon both the public statements of the entity and these press releases. And again, not press releases, sorry, press reports. And again, the Office of General Counsel agreed with us that there was reason to believe at least that some amount of the non-exempt non-internet spending was coordinated within the meaning of FECA. I mean, your focus really is on the exemption. If I'm hearing you correctly, it's neither here nor there if the other side says, well, you assume all of this was coordinated. If I'm hearing you correctly, you're saying, if it was, maybe it wasn't. The point is, not all of it was subject to the exemption. And that's what we can't see. Correct. There's two lines of inquiry. One, how broadly to apply the exemption. Two, where we're talking about uncontested, non-exempt spending, what in fact was coordinated within the meaning of FECA. If nothing further or no further questions. I want to be clear about one other thing. So, here, you're relying on the regulations at 100.8A and 100.7A13. Is that right? Or 100.23. We are relying upon the statutory reporting requirements. And that's USC 431.8A1 and 9A1. All right. And that talks about generally. All right. But then the regulations are more specific in talking about in-kind contributions. And coordinated contributions. That's what I'm trying to throw in on here. Right. I would direct the court's attention to two statutory provisions. One, 52 USC 301.16A7. Hold on. Hold on. 52 USC 301.16A7Bi. This defines what a coordinated expenditure is. It says an expenditure made in cooperation, consultation, or concert. Right. Right. And then it says these are contributions to such candidates. So, that is the provision that delineates what a coordinated expenditure is and how it's treated as a contribution. Then the various provisions of 52 USC 301.04B state with great specificity the reporting requirements for a committee. And among the reporting requirements are these itemized information about date, amount, purpose, et cetera. So, these are the two provisions of carve out. So, those are the two kind of operating areas of law. And we did not challenge the internet exemption, which is a number of regulations, as contrary to FECA in and of itself. We did say as an APA challenge to the construction given to the regulations by the controlling commissioners that dismissed our complaint. But the court below found that the APA claim was basically coextensive with our FECA claim and dismissed on that basis. Anything further? Nothing further from appellants. Thank you. We'll take the case under advisement.
judges: Rogers, Walker, Edwards